Arthur BARY, Anna Bary, Harold Zepelin, Joseph William Scherrer, Maia Scherrer and Patricia Julia Blau, Appellants,

v.

UNITED STATES of America, Appellee.

Nos. 6286-6291.

United States Court of Appeals Tenth Circuit.

May 31, 1961.

Ira C. Rothgerber, Jr., Denver, Colo., Austin W. Scott, Jr., Boulder, Colo., John R. Evans, and Theodore A. Borrillo, Denver, Colo. (John J. Abt, New York City, was with them on the brief) for appellants.

George B. Searls, Atty., U. S. Dept. of Justice, Washington, D. C., and Donald G. Brotzman, U. S. Atty., Denver, Colo. (J. Walter Yeagley, Asst. Atty. Gen., Jack D. Samuels and Robert L. Keuch, Attys., U. S. Dept. of Justice,

Washington, D. C., were with them on the brief), for appellees.

Before BRATTON, PICKETT and LEWIS, Circuit Judges.

BRATTON, Circuit Judge.

This is a criminal case in which Arthur Bary and others were charged in an indictment containing a single count with the offense of conspiring (1) to advocate and teach the duty and necessity of overthrowing the Government of the United States by force and violence, and (2) to organize the Communist Party of the United States to advocate and teach the overthrow and destruction of the Government of the United States by force and violence, in violation of the so-called Smith Act, 54 Stat. 670, 671, 18 U.S.C.A. § 2385. The substance of the indictment was stated on the former appeal, Bary v. United States, 10 Cir., 248 F.2d 201, and need not be stated in detail here. After remand, the case was dismissed as to the defendant Johnson. It was tried as to the other defendants. All of them were convicted and sentenced. Separate appeals were perfected and the several appeals were consolidated in this court.

One contention vigorously urged for reversal of the judgments is that the withdrawal from the jury of a portion of the indictment invalidated the indictment in toto and required its dismissal. In carefully chosen language, the court at the outset of the trial and again in the formal instructions made it clear to the jury that the portion of the indictment charging a conspiracy to organize the Communist Party was withdrawn from their consideration. And with painstaking care, the court explained to the jury that appellants were on trial only on the charge of conspiring to advocate and teach the duty and necessity of overthrowing the Government by force and violence. The argument is made that such withdrawal amounted to an amendment of the indictment; that the court was without power to amend the indictment; that the amendment invalidated the indictment as a whole; and that the case should have been dismissed. It is

said that no method is available by which to determine with certainty that the grand jury would have returned the indictment if it had known that under controlling law appellants could be indicted and convicted only for conspiring to advocate and teach the overthrow of the Government by force and violence but not for conspiring to organize the Communist Party. Strong reliance is placed upon Ex parte Bain, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849, to sustain the contention. That case condemned the action of the trial court in striking words from the indictment. It did not go any further. Ford v. United States, 273 U.S. 593, 602, 47 S.Ct. 531, 71 L.Ed. 793. No words were stricken from the indictment in this case. Its textual content remained unchanged. Reliance is also placed upon Stirone v. United States, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252. That case condemned the dual action of the court in admitting evidence which tended to establish a crime not charged in the indictment and in submitting to the jury instructions relating to such a crime. In this case, the court did not intentionally admit evidence merely tending to establish organizing the Communist Party as one objective of the conspiracy. Instead, the court was at pains throughout the trial to exclude evidence of that kind. And the court made it crystal clear at various junctures during the trial proceedings, including emphasis in the instructions, that appellants were being tried solely and exclusively on the charge of conspiring to advocate and teach the overthrow of the Government by force and violence. The action of the court in withdrawing from the consideration of the jury that portion of the indictment charging a conspiracy to organize the Communist Party was not within the range of condemnation enunciated in Ex parte Bain, supra, or Stirone v. United States, supra.

 Rule of Criminal Procedure 7 (d), 18 U.S.C.A., expressly empowers the court on the motion of the defendant to strike surplusage from the indictment or information. It is not contended that

the rule has any present application. But independent of an authorizing statute or rule, mere surplusage in an indictment or information may be disregarded, and such disregard does not render the indictment or information invalid if sufficient remains to charge a crime. Ford v. United States, supra; United States v. Drawdy, D.C., 288 F. 567; United States v. Weiss, D.C., 293 F. 992. In remanding Yates v. United States, 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356, for a new trial as to some of the appellants, it was implicit in the action of the court that with the allegations contained in the indictment respecting a conspiracy to organize the Communist Party disregarded, the indictment was sufficient to charge a conspiracy to advocate and teach the overthrow of the Government by force and violence. And that was also implicit in the action of this court in remanding Bary v. United States, supra, for a new trial as to all of the appellants, limited to the charge of conspiring to advocate the overthrow of the Government by force and violence. The invalidity of the indictment insofar as it charged a conspiracy to organize the Communist Party did not vitiate the indictment as a whole. Instead, such invalid portions were open to be treated as surplusage and disregarded. United States v. Albanese, 2 Cir., 224 F.2d 879, certiorari denied, 350 U.S. 845, 76 S.Ct. 87, 100 L.Ed. 753. And enough remained in the indictment to charge a conspiracy to advocate and teach the overthrow of the Government by force and violence.

■ Certain witnesses for the Government admitted in the course of their testimony that they had testified before the grand jury which returned the indictment. Appellants moved the court to require the Government to make available to them for purposes of impeachment such testimony given before the grand jury, or in the alternative that the court examine it in camera and then make available to them the portions thereof, if any, which disclosed inconsistencies with the testimony given at the trial. The motions were denied. It is traditional in judicial history that the proceedings before the grand jury are secret. Disclosure is to be made only when the need therefor outweighs the countervailing policy of secrecy. And when an accused seeks access to the proceedings of the grand jury for use for impeachment, or seeks examination of them in camera as a preliminary step to making them available for such purpose, the burden rests on him to show some basis for the belief that particular need for disclosure exists and outweighs the policy of secrecy. Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 79 S.Ct. 1237, 3 L.Ed.2d 1223; Travis v. United States, 10 Cir., 269 F.2d 928, reversed on another ground, 364 U.S. 631, 81 S.Ct. 358, 5 L.Ed.2d 340. Appellants failed to make the required showing of particularized need to break the seal of secrecy surrounding the proceedings before the grand jury, and, therefore, the court did not abuse its discretion in denying the request. It was recently held in effect that when it appears in the trial of a criminal case that a witness for the Government testified before the grand jury, the court upon request of the defendant should examine the minutes of the grand jury for inconsistencies and upon discovery of inconsistencies should make the inconsistent portions available to the defendant for use for impeachment purposes. United States v. Giampa, 2 Cir., 290 F.2d 83. But until the Supreme Court shall hold otherwise, we adhere to the rule requiring some preliminary showing of particularized need before the seal of secrecy attaching itself to the proceedings of the grand jury is broken.

Error is predicated upon asserted failure of the court to comply with the exactions of 18 U.S.C. § 3500. The statute defines the term "statement" as used therein. It provides in substance that a statement or report made by a Government witness or prospective witness in a criminal case to an agent of the Government shall not be within the reach of subpoena, discovery, or inspection until after such witness has testified on direct examination in the trial of the case.

It further provides that after a witness called by the Government has testified on direct examination, the court shall on motion of the defendant require the Government to produce any statement, as defined in the statute, of the witness in the possession of the Government which relates to the subject matter concerning which the witness has testified. It further provides that if the entire contents of the statement relate to the subject matter of the testimony of the witness, the court shall order it delivered to the defendant for his examination and use. It further provides that if the Government contends that the entire contents of a statement ordered to be produced do not relate to the subject matter of the testimony of the witness, the court shall examine it in camera; that the portion or portions, if any, which do not relate to the testimony of the witness shall be excised; and that with such portion or portions excised, the court shall direct delivery of the statement to the defendant for his use. And it further provides that if the Government elects not to comply with an order of delivery, the court shall strike from the record the testimony of the witness; and the trial shall proceed unless the court in its discretion shall determine that the interests of justice require that a mistrial be declared. The Government relied heavily upon its witnesses Lautner, Hartle, Martin, Morris, Duran, and Fortson. Lautner and Hartle were former members of the Communist Party, and they were paid witnesses for the Government in this and other criminal prosecutions under the Act, supra. Martin and Morris were also former members of the Party. Duran and Fortson joined the Party at the request of representatives of the Federal Bureau of Investigation. They spied on appellants; made reports; and furnished memoranda respecting appellants. After the witness Lautner had testified on direct examination, the Government stated to the court that it had in its possession 739 documents in connection with his services. It stated that 36 of such documents were statements within the pur-

view of section 3500, and these were produced. About a week later, the Government produced three additional documents which it conceded could be treated as statements. Appellants contended that the action of the Government in submitting to them for examination only 39 of the documents and in failing to submit either to them or the court approximately 700 amounted to the Government arrogating to itself the function of determining whether the documents withheld were statements within the purview of the statute; whether they contained matter relating to the testimony given by the witness; and whether they were appropriate for use for impeachment purposes. The Government contended in effect that it had the right under the statute to determine whether the documents withheld were or were not statements within the intent and meaning of the statute. The Government expressed a willingness to submit the documents to the court for examination in camera, but the willingness was accompanied by a concurrent assertion that they were not statements. It was the expressed view of the court that the court had the power to require the Government to produce or to accept for examination in camera only documents which the Government conceded were statements. At one juncture, the court made the comment "(W)here the Government says matters withheld are not statements * * * the Court is obliged to accept that statement as final unless it is made to appear extrinsically that the material is * * * a statement * * *." And at another juncture, the court observed that since the Government persisted in its position that the 700 documents were not statements "(T)here is no way the court could undertake to look at them." The suggestion was made that extrinsic evidence be offered but that was not done. And the court declined to require the Government to make the 700 documents available to appellants or to accept them itself for examination in camera unless the Government conceded that they were statements. While differing in respect

to the number of documents in the possession of the Government, the number conceded to be statements and delivered to the court, and the number withheld, fairly comparable stalemates developed concerning documents relating to certain other witnesses for the Government.

■ The enactment of the statute was the outgrowth of the decision in Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103. The statute does not purport to affect or modify recognized rules of evidence having application to statements when produced. Its major concern is limiting and regulating access to government documents. It represents a studied congressional purpose to limit the right of a defendant in a criminal case to the production from the files of the Government to statements as defined in the statute appropriate for use for impeachment purposes. Palermo v. United States, 360 U.S. 343, 79 S.Ct. 1217, 3 L.Ed.2d 1287; Campbell v. United States, 365 U.S. 85, 81 S.Ct. 421, 5 L.Ed. 2d 428. And it is implicit in the statute that if a document, in its original form or after excision, meets the test of the statute, it should be delivered for appropriate use for purposes of impeachment. Clancy v. United States, 365 U.S. 312, 81 S.Ct. 645, 5 L.Ed.2d 574; United States v. Prince, 3 Cir., 264 F.2d 850; United States v. McKeever, 2 Cir., 271 F.2d 669; United States v. Tomaiolo, 2 Cir., 286 F.2d 568.

■ But the statute does not vest in the Government the unilateral power to determine without judicial supervision a controverted question between the parties concerning whether a document in the possession of the Government constitutes a statement within the purview of the statute, and if so, whether it relates to events and activities respecting which the witness has testified on direct examination and, therefore, is appropriate or not for use for impeachment purposes as contemplated by the statute. No such grant of power to the Government is contained in the statute. When a controverted question of that kind aris-es, it is for judicial determination with the judge acting as arbiter. Campbell v. United States, supra; Holmes v. United States, 4 Cir., 271 F.2d 635. And in the discharge of the responsibility resting upon the judge, an inquiry should be made as an aid to the court in making the judicial determination. The inquiry is not an ordinary adversary proceeding. It is merely a procedural step to be conducted in the absence of the jury to aid the judge in the discharge of the responsibility resting upon him in connection with the enforcement of the statute. Campbell v. United States, supra; United States v. Tomaiolo, 2 Cir., 280 F.2d 411. It was the duty of the court in the circumstances disclosed here to accept the withheld documents, examine them in camera, and proceed thereafter in accordance with the statute. Campbell v. United States, supra; Clancy v. United States, supra. Of course, the task of examining such a large number of documents would necessarily have exacted much time and patience without any assurance that a change in the ultimate outcome would be effected, but their non-examination amounted to failure to comply with the exactions of the statute.

■ The action of the court in denying motions for judgment of acquittal is challenged. It is argued that the evidence was insufficient to take the case to the jury on the charge of conspiring to advocate and teach the overthrow of the Government by force and violence and was insufficient to sustain the verdicts. The evidence adduced at the earlier trial was reviewed in detail on the former appeal. While differing in some respects, it may be said generally that the evidence on the two trials was substantially alike in respect to the establishing a conspiracy to advocate and teach the overthrow of the Government by force and violence. On the former appeal, we expressly held that the evidence as to each of the appellants disclosed incitement and advocacy of action in an effort to overthrow the Government by force and violence as speedily as cir-

cumstances would permit, within the purview of the Act, supra; and we entertain that view in respect to the evidence adduced at the last trial.

Exceptions were taken to specified parts of the instructions given to the jury and requested instructions were refused. No good purpose would be served by discussing seriatim the several contentions urged that the instructions given were erroneous. It suffices to say that we think the instructions were clear, adequate, comprehensive, and fair. It is difficult to believe that the jury entertained any doubt respecting the issues in the case or the principles of law having pertinent application thereto. We think the instructions considered as a whole were free of substantial defect or error. And it is well settled that where the instructions given are adequate, comprehensive, and fair, the court may in its discretion refuse to give requested instructions even though they constitute correct statements of law. Hancey v. United States, 10 Cir., 108 F.2d 835; Jones v. United States, 10 Cir., 251 F.2d 288, certiorari denied, 356 U.S. 919, 78 S.Ct. 703, 2 L.Ed.2d 715; Marks v. United States, 10 Cir., 260 F.2d 377, certiorari denied, 358 U.S. 929, 79 S.Ct. 315, 3 L.Ed.2d 302.

Complaint is lodged upon the refusal of the court to grant a mistrial on account of publicity which appeared during the trial in two daily newspapers published in Denver, Colorado, or to interrogate the jurors concerning such publicity; and complaint is also made that a new trial should have been granted on account of newly discovered evidence. Since the judgments must be reversed on another ground, there is manifestly no need to explore these questions. Other contentions are urged, but we think they lack substance and do not merit discussion.

For the error in failing to comply in full measure with the requirements of section 3500, supra, the judgments are severally reversed and the causes remanded.