**George J. MATTHEWS, Appellant,**

**v.**

**UNITED STATES, Appellee.**

**No. 7426.**

District of Columbia Court of Appeals.

Argued Feb. 19, 1974.

Decided July 30, 1974.

Jeffrey Freund, Washington, D. C., appointed by this court, for appellant.

Albert H. Turkus, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty. at the time the brief was filed, John A. Terry and Raymond Banoun, Asst. U. S. Attys., were on the brief, for appellee.

13. Our review here is confined to the narrow ground upon which the trial court based its grant of the motion to suppress.

Before REILLY, Chief Judge, and FICKLING and PAIR, Associate Judges.

FICKLING, Associate Judge:

Appellant was convicted of armed robbery and robbery. The armed robbery took place on June 1, 1972, at the Miles' Long Sandwich Shop at 7th Street & Florida Avenue, N.W. The robbery occurred almost two months later on July 28, 1972, at the same sandwich shop.

At trial the government, in presenting its case-in-chief, called as witnesses three employees of this Miles' Long Sandwich Shop —Doris Rouse, Shirley Abraham and Carlyn Benjamin. These witnesses identified appellant as the robber. After each employee testified, defense counsel moved for production of various statements pursuant to the Jencks Act.[1] Appellant principally contends that the trial court erred by failing to conduct an adequate inquiry before denying his Jencks requests for (1) the trial prosecutor's notes taken during his interviews with Mrs. Abraham and Miss Benjamin and (2) the PD 251 forms and radio runs relating to four previous robberies at another Miles' Long Sandwich Shop in which appellant was allegedly involved. We agree and remand for further proceedings.

We consider first defense counsel's request for production of notes taken by the trial prosecutor during interviews with Mrs. Abraham and Miss Benjamin. Mrs. Abraham testified that she had been interviewed twice by the trial prosecutor and that on each occasion he took notes. Defense counsel moved for production of these notes. In response to defense counsel's request, the prosecutor said:

Your Honor, I never take notes that are verbatim in nature. . . . I do not have anything substantially verbatim from this witness.

The trial judge, without either examining the notes or requiring further testimony, denied the request.

After the direct testimony of Miss Benjamin, defense counsel again moved for production of any notes taken by the prosecutor during his interviews with Miss Benjamin. In response to this request, the prosecutor said:

Your Honor, all of the notes I took, none of them were verbatim. I never take verbatim notes.

Similarly, the trial court, without conducting any further inquiry, denied the request.

The Jencks Act, 18 U.S.C. § 3500, requires that "[a]fter a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified." Paragraph (e) of the statute defines a statement to include the following:

(1) a written statement made by said witness and signed or otherwise adopted or approved by him;

(2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness to an agent of the Government and recorded contemporaneously with the making of such oral statement.

. . .

The government argues that the trial court conducted a sufficient inquiry to determine whether the prosecutor's notes were substantially verbatim. To support this contention, the government relies on United States v. Augenblick, 393 U.S. 348, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969). In that case the Supreme Court was reviewing a decision by the Court of Claims in which a court-martial was collaterally at-

1. 18 U.S.C. § 3500 (1970).

tacked on the ground that the alleged violations of the Jencks Act rose to a constitutional level. At the court of inquiry it was revealed that a government agent had taken notes during an interview with a government witness. The agent testified that he had made "rough pencil notes" during the interview. The defense's motion for production of the notes was denied by the law officer without examining the notes in camera. The Supreme Court concluded that the law officer and Board of Review did not abuse their discretion in holding that the notes need not be produced under the Jencks Act, and reversed the Court of Claims on the ground that it was error to set aside the court-martial conviction because the facts of the case did not rise to a constitutional level.

We think *Augenblick* is distinguishable from the instant case. In *Augenblick* the law officer had at least one fact on which to base his denial of the Jencks request—the notes made were "rough." Here, however, there are no facts. All the trial court had before it was the bare conclusion from the prosecutor that his notes were not substantially verbatim.

■■■ In our judgment the trial court erred by failing to conduct a further inquiry after the prosecutor asserted that his notes, taken during interviews with Mrs. Abraham and Miss Benjamin, were not substantially verbatim. The trial court, by basing its decision on the factually unsupported conclusion of the prosecutor, in effect allowed the government to determine whether the notes were producible under the Act. This, of course, is contrary to the requirements of the Act. As the Fifth Circuit pointed out in United States v. Kasouris, 474 F.2d 689, 691–692 (1973):

The statute [Jencks Act] does not vest in the government the unilateral power to determine without judicial supervision the question of whether or not the statement falls within the purview of the statute. When a controverted question . . . arises, it is for judicial deter-

mination with the judge acting as arbiter. Bary v. United States, 292 F.2d 53 (10th Cir., 1961). . . .

The type of inquiry which should have been conducted by the trial judge is summarized as follows in Williams v. United States, 117 U.S.App.D.C. 206, 208, 328 F.2d 178, 180 (1963):

[T]hese statutory provisions [Jencks Act] require that when a defendant seeks the production of a statement, as defined in the Act, "the district court has an affirmative duty to determine whether any such statement exists and is in the possession of the Government and, if so, to order the production of the statement." In Hilliard v. United States, 115 U.S.App.D.C. 86, 317 F.2d 150, 151 (1963) we further pointed out, "A trial judge is to conduct such inquiry as may be necessary to determine whether or not the conditions of the statute have been satisfied. His inquiry may involve an interrogation of witnesses, or he may make an in camera examination of the statement," or the circumstances may call for both such in camera examination and interrogation of witnesses. This is clear from the decisions of the Supreme Court in Campbell v. United States, 373 U.S. 487, 83 S.Ct. 1356, 10 L.Ed.2d 501 (1963), decided subsequent to the trial of this case, and in Palermo v. United States, 360 U.S. 343, 354–355, 79 S.Ct. 1217, 1226, 3 L.Ed.2d 1287 (1959). In the latter case the Court said:

"It is also the function of the trial judge to decide, in light of the circumstances of each case, what, if any, evidence extrinsic to the statement itself may or must be offered to prove the nature of the statement. In most cases the answer will be plain from the statement itself. In others further information might be deemed relevant to assist the court's determination."

■■■ We consider next defense counsel's request for certain PD 251 forms and ra-

dio runs.[2] At a conference before the start of the trial, the prosecutor advised defense counsel and the trial court that Mrs. Rouse was able to identify appellant on the day of the first robbery because she had seen him on four previous occasions at another Miles' Long Sandwich Shop. On each of these occasions, appellant allegedly committed a robbery. The prosecutor further explained, however, that Mrs. Rouse would not state that she recognized appellant because of these previous robberies. Rather, she would testify that she was able to recognize appellant on June 1, 1972, because she had seen him on previous occasions at another Miles' Long Sandwich Shop. In response defense counsel pointed out that this proposed testimony would trigger an obligation on the part of the government to provide him with the PD 251 forms and radio runs relating to these robberies. The government's position was that these documents were subject to subpoena; therefore, it had no obligation to supply them under the Jencks Act.

During the second day of trial, Mrs. Rouse was called as a witness by the government. She testified as follows:

Q. [Prosecutor] Now, can you tell us whether there was anything unusual about Mr. Matthews, the person whom you have identified just now?

A. [Mrs. Rouse] Well, not exactly, because I had seen him before.

Q. You had seen him before?

A. Yes.

Q. Where had you seen him before?

A. At the Miles Long I used to work at.

After she completed her direct testimony, defense counsel requested the PD 251 forms and the radio runs relating to the four previous robberies. The trial court, without attempting to determine whether these documents were producible under the Jencks Act, denied the request.

██ As with the trial prosecutor's notes, the trial court erred by failing to conduct an appropriate inquiry to determine whether the PD 251 forms and radio runs relating to the four previous robberies were producible under the Jencks Act. *See* Duncan v. United States, 126 U.S.App.D.C. 371, 379 F.2d 148 (1967). The fact that these documents may have been subject to subpoena in no way undercuts the government's obligation under the Jencks Act. In *Duncan* the court remanded the case for further proceedings in order for the trial court to determine whether a similar PD 251 form was producible under the Jencks Act.

We think that this case must be remanded to the trial court for a determination as to whether the following documents—(1) the prosecutor's notes taken during his interviews with Mrs. Abraham and Miss Benjamin and (2) the PD 251 forms and radio runs relating to the four previous robberies—are producible statements within the meaning of the Jencks Act.[3] The trial court should follow the procedures for such a determination as stated above by the court in *Williams, supra*. If the trial court determines that any of these documents should have been produced by the government and failure to do so was prejudicial error, it should vacate the prior judgment and grant appellant a new trial. "Otherwise, the trial court should supplement the record with new findings of fact and enter a new final judgment so that the right to appellate review on an enlarged record will have been preserved." Saunders v. District of Columbia, D.C.App., 263 A.2d 58, 62 (1970). *See, e. g.*, Campbell v. United States, 365 U.S. 85, 99, 81 S.Ct.

2. These documents contain the initial description of the robber given to the police by the victim or other eyewitness.

3. Since we are remanding this case to determine whether these documents are producible, it is unnecessary for us to consider whether the government violated its duty under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), to produce all exculpatory evidence for the defense.

421, 5 L.Ed.2d 428 (1961); Williams v. United States, *supra*.

Remanded with instructions.

REILLY, Chief Judge (concurring in part and dissenting in part):

I concur in that portion of the order remanding the case to the trial court to determine whether the PD 251 forms filled out in connection with the previous robberies were either "adopted" by the witness Rouse, or amounted to a "substantially verbatim recital of [any] oral statement made by said witness" on those occasions, although the *Duncan* holding relied upon in the opinion[1] is not really controlling. In *Duncan*, where the PD form, a report which police officers prepare and file as a matter of routine when crimes are reported, was actually signed by the policeman on the stand, it was clearly incumbent upon the trial court to order its production for in camera inspection under subsection (e)(1) of the Jencks Act. Here the PD 251's could not have been signed by the witness. Nevertheless, I suppose if her statement was a short one, the officer making out the PD 251 may have transcribed her exact words.

I have more difficulty in understanding how the radio runs could fall within the statute. Such broadcasts are simply brief summaries of what a complaining witness has told the police—probably no more than a short description of the fugitive and the nature of the crime. The Supreme Court has held that selected excerpts do not fall within the purview of the act. In the leading case, Palermo v. United States, 360 U. S. 343, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959), the Court said at 352, 79 S.Ct. at 1224:

It is clear that Congress was concerned that only those statements which could properly be called the witness' own words should be made available to the defense for purposes of impeachment. It was important that the statement could fairly be deemed to reflect fully and without distortion what had been said to the government agent. Distortion can be a product of selectivity as well as the conscious or inadvertent infusion of the recorder's opinions or impressions. It is clear from the continous congressional emphasis on "substantially verbatim recital," and "continuous, narrative statements made by the witness recorded verbatim, or nearly so * * *," see Appendix B, post 79 S.Ct. page 1228, *that the legislation was designed to eliminate the danger of distortion and misrepresentation inherent in a report which merely selects portions, albeit accurately, from a lengthy oral recital.* Quoting out of context is one of the most frequent and powerful modes of misquotation. We think it consistent with this legislative history, and with the generally restrictive terms of the statutory provision, to require that summaries of an oral statement which evidence substantial selection of material, or which were prepared after the interview without the aid of complete notes, and hence rest on the memory of the agent, are not to be produced. Neither, of course, are statements which contain the agent's interpretations or impressions. . . . (Italics supplied; footnotes omitted.)

As the case is being remanded in any event for in camera inspection of the PD 251's, I have no objection to the trial judge also requiring the prosecutor to present his "notes" to him before he rules on their admissibility. Had this been the only Jencks Act issue in the case, however, I should be inclined to agree with the trial judge, for the *Augenblick*[2] holding of the Supreme

---

1. Duncan v. United States, 126 U.S.App.D.C. 371, 379 F.2d 148 (1967). In the other case cited, United States v. Kasouris, 474 F.2d 689 (5th Cir. 1973), the document sought had also been signed by the witness. Hence the quoted observation of the court was mere dictum.

2. United States v. Augenblick, 393 U.S. 348, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969).

Court plainly rejects the doctrine propounded in *Williams*,[3] and earlier decisions of the Court of Appeals for this circuit, which require the trial judge to call for the production of any documents that defense counsel characterizes as Jencks Act "material." Here we say that the trial judge should not have been satisfied with the prosecutor's explanation that his notes were "not substantially verbatim" until he had personally examined them. Yet in *Augenblick* a unanimous court held that the presiding judicial officer did not err in failing to call for the production of a government agent's "rough notes" and reversed a Court of Claims decision to the contrary. I find the purported distinction between the case before us and *Augenblick* unconvincing, particularly as Mr. Justice Douglas, in his opinion, observed:

It is difficult to tell from this record the precise nature of Mendelson's "notes", whether they recorded part of Hodges' interview or whether they were merely a memorandum giving names, places, and hours. Certainly they were not a statement covering the entire interview; and if they were a truncated version, they would pose the question reserved in Palermo v. United States, 360 U.S. 343, 79 S.Ct. 1217, 3 L.Ed.2d 1287. Since on examination of the record we are left in doubt as to the precise nature of the "notes", we cannot say that the command of the Jencks Act was disobeyed when they were not ordered to be produced.

Moreover, we said in Palermo v. United States, *supra*, 360 U.S. at 353, 79 S.Ct. 1217 at 1225, that the administration of the Jencks Act must be entrusted to the "good sense and experience" of the trial judges subject to "appropriately limited review of appellate courts." We cannot conclude that when it came to the "rough notes" of Mendelson, the law officer and Board of Review abused their discretion in holding that they need not

be produced under the Jencks Act. 93 U.S. at 355, 89 S.Ct. at 533.

In the case before us the record also does not disclose the precise nature of the prosecutor's notes. Consequently we, too, being unable to say that "the command of the Jencks Act was disobeyed when they were not ordered to be produced," could well treat the trial court's ruling as within the scope of its discretion.

3. Williams v. United States, 117 U.S.App.D.C. 206, 328 F.2d 178 (1963).