**UNITED STATES, Appellant,**

v.

**Jacqueline J. JACKSON, Appellee.**

**No. 80–587.**

District of Columbia Court of Appeals.

Argued April 7, 1981.

Decided May 20, 1981.

---

13. *See, e. g., Government of the Virgin Islands v. Gereau, supra.*

14. *See* Super.Ct.Cr.R. 43.

Harold Damelin, Asst. U. S. Atty., Washington, D. C., with whom Charles F. C. Ruff, U. S. Atty., and John A. Terry, Gordon C. Rhea, and A. Carlos Correa, Asst. U.

S. Attys., Washington, D. C., were on the brief, for appellant.

Robert A. Philipson, Washington, D. C., appointed by the court, for appellee.

Before NEWMAN, Chief Judge, and KERN and FERREN, Associate Judges.

FERREN, Associate Judge:

This case presents a single question: whether the trial court abused its discretion in refusing to examine the prosecutor's "papering" notes before ordering the government to produce them pursuant to the Jencks Act, 18 U.S.C. § 3500 (1976). We conclude that because the court's voir dire was inconclusive as to whether the notes contained a police officer's "statement," *id.*

§ 3500(e), the trial court abused its discretion in ordering production without inspecting the notes themselves *in camera.* We therefore reverse the court's order prohibiting the government from calling the police officer to testify; we remand for further proceedings.

I.

On April 10, 1979, the United States filed an information charging appellant, Jacqueline J. Jackson, with possession of marijuana. *See* D.C.Code 1973, §§ 33–401(n), –402(a). A year later, on April 23, 1980, the case came to trial. Before trial and out of the hearing of the jury, defense counsel informally requested "Jencks" material. *See* 18 U.S.C. § 3500 (1976).[1] The request

---

1. 18 U.S.C. § 3500 (1976) provides in full:

(a) In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.

(b) After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.

(c) If the United States claims that any statement ordered to be produced under this section contains matter which does not relate to the subject matter of the testimony of the witness, the court shall order the United States to deliver such statement for the inspection of the court in camera. Upon such delivery the court shall excise the portions of such statement which do not relate to the subject matter of the testimony of the witness. With such material excised, the court shall then direct delivery of such statement to the defendant for his use. If, pursuant to such procedure, any portion of such statement is withheld from the defendant and the defendant objects to such withholding, and the trial is continued to an adjudication of

the guilt of the defendant, the entire text of such statement shall be preserved by the United States and, in the event the defendant appeals, shall be made available to the appellate court for the purpose of determining the correctness of the ruling of the trial judge. Whenever any statement is delivered to a defendant pursuant to this section, the court in its discretion, upon application of said defendant, may recess proceedings in the trial for such time as it may determine to be reasonably required for the examination of such statement by said defendant and his preparation for its use in the trial.

(d) If the United States elects not to comply with an order of the court under subsection (b) or (c) hereof to deliver to the defendant any such statement, or such portion thereof as the court may direct, the court shall strike from the record the testimony of the witness, and the trial shall proceed unless the court in its discretion shall determine that the interests of justice require that a mistrial be declared.

(e) The term "statement", as used in subsections (b), (c), and (d) of this section in relation to any witness called by the United States, means—

(1) a written statement made by said witness and signed or otherwise adopted or approved by him;

(2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or

(3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury.

included the prosecutor's "papering" notes to the extent they contained the "statement" of the police officer who reported the incident to the prosecutor. *Id.* § 3500(e)(1), (2). Defense counsel asked for a voir dire in order to determine whether the notes contained such a producible "statement."

The government took the position that the two-page notes constituted attorney work product and did not include a "statement." The government suggested that the court could resolve the issue either by inspecting the notes *in camera* or by taking testimony.

The court found "distasteful" the prospect of examining the prosecutor's files and urged the government to turn the notes over to the defense. The prosecutor declined to do so. The court chose not to review the notes *in camera* and instead commenced voir dire.

The police officer and the two prosecutors who had papered the case testified. Officer Roger James Kinney stated that he had discussed the case with the prosecutor and explained what he had observed. Although he had no recollection whether the prosecutor had taken notes during this particular papering, he stated that note-taking is "the usual procedure." The prosecutor had questioned him to verify the notes, but he could not recall whether the prosecutor had read or showed the notes to him or whether he had corrected any of the information. Finally, the officer testified that he could not remember ever having signed a prosecutor's papering notes.

Because Officer Kinney could not recall every detail of the case, defense counsel called Peggy Tobolowsky and Harold Brazil, the Assistant United States Attorneys who had papered the case. Although neither had specific recollection, they each testified from the papering notes themselves and explained their normal procedures.

Referring to the notes, Tobolowsky explained the contents. "[T]hey reflect my recollection and my mental impressions of the case. . . . Among the notations on the document are included the trial strategy, motion strategy." In addition, she confirmed that "[t]here are factual statements in the papering notes" obtained "[f]rom the officers present at the papering."

Concerning the specificity of the notes, Tobolowsky could testify only that

> [m]y normal practice would be to receive the information from an officer who had made an arrest or been involved in an arrest and record enough facts and circumstances as to give a general portrait of a case. I cannot state specifically what information was given to me on the date of papering the Jacquelin Jackson case nor whether the information included in the case represented every fact and circumstance told me or was a partial reflection of what I heard.

Tobolowsky stated that only one word in the papering notes was in quotation marks and summarized the notes as "reflect[ing] the normal procedure that I follow in doing intake, just recording in a way that is most useful to me the information I am receiving."

As to verification of the notes, Tobolowsky stated that on occasion she would "ask for verification of details." Her "normal practice," however, "would not be to show what I had written to an officer." She stated specifically that these notes did not contain any signature by Officer Kinney.

Examining the papering notes, the second prosecutor, Harold Brazil, testified that in addition to indications of his theory of the case, the notes "appear[ed] to" contain factual statements about the circumstances of the case. Brazil stated that such factual information could come from police officers, other witnesses, or written reports. He confirmed that the notes included "no quotation." As to verification of the notes, he stated that "more than likely" he never had

Congress enacted the original version of this statute in response to the Supreme Court decision in *Jencks v. United States*, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957). *See Palermo v. United States*, 360 U.S. 343, 345–48, 79 S.Ct. 1217, 1221–1223, 3 L.Ed.2d 1287 (1959).

shown papering notes to a police officer and that these notes in particular contained no indication of approval by the papering officer.

At the conclusion of the proceeding the court ruled that the "[d]efense ha[d] met its burden of showing that all facts contained in the papering notes must be turned over." The court ordered the government "to split the facts from what you consider work product or nondiscoverable type of material into two separate documents." The government should turn "the fact portion" over to the defense at the conclusion of Officer Kinney's direct examination. As to the balance, the court ruled:

> If I must do this distasteful task of reviewing the other file I will review that but they will be separated so I will not have to see any fact matters which I have no desire to see.
>
> . . . .
>
> If I determine that they [the allegedly nondiscoverable portions of the notes] are discoverable by the Defendant, if I am required after I read *Campbell* [*v. United States*, 365 U.S. 85 [81 S.Ct. 421, 5 L.Ed.2d 428] (1961)] to conduct an in camera inspection I will then turn over to the Defendant those portions that I deem appropriate.

After a recess, the government again asked the court to "review the notes and make your own independent determination." At this point defense counsel interposed that, to the extent the government was claiming a work product privilege, the court should inspect the statements *in camera* and see the entire document, not just the allegedly privileged portions, in order to confirm that the government was not withholding anything. The court stated that it would "accept the Government's integrity in that regard" and further explained its earlier ruling:

> The papering assistant and the policeman have no knowledge of whether they [the notes] were verbatim [*see* U.S.C. § 3500(e)(2) (1976)] or adopted [*see id.*

§ 3500(e)(1)] and since the Government has the burden and the Defense raises the issue and the Government doesn't know, it is easy to ascertain that but the witnesses have no idea at all whether these facts are substantially verbatim or not. So in the absence of that, the Defense gets them.

The government again urged that "if Your Honor would examine the notes, you would see they could not be verbatim on their face . . . ." The court again repeated its earlier ruling.

The government then restated its position that "none of the material in the notes is Jencks material and decline[d] to turn any of it over to the Court." As a sanction for the government's refusal to comply with its discovery ruling, the court ordered that Officer Kinney not testify at trial. *See id.* § 3500(d). The government appeals this order. *See United States v. Anderson*, D.C. App., 366 A.2d 1098, 1099 & n.1 (1976) (per curiam); D.C.Code 1973, § 23–104(a)(1); D.C.App.R. 4 III(a).

## II.

In deciding whether a criminal defendant is entitled to discovery under the Jencks Act, 18 U.S.C. § 3500 (1976), the trial court must consider, among other questions, whether the document requested contains the "statement" of a government witness. *Id.* § 3500(b). The Act defines three types of "statements" that may be producible:

> (1) a written statement made by said witness and signed or otherwise adopted or approved by him;
>
> (2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or
>
> (3) a statement, however taken or recorded, of a transcription thereof, if any, made by said witness to a grand jury.

*Id.* § 3500(e). The Supreme Court has held that the "work product" doctrine does not shield from discovery writings, such as government attorneys' interview notes, that are otherwise producible under the Act. *Goldberg v. United States*, 425 U.S. 94, 101–02, 96 S.Ct. 1338, 1343–1344, 47 L.Ed.2d 603 (1976); *accord, Saunders v. United States*, 114 U.S.App.D.C. 345, 348–49, 316 F.2d 346, 349–50 (1963) (Reed, J.); *see Matthews v. United States*, D.C.App., 322 A.2d 908, 910 (1974).

The statute prescribes no set procedure for resolving the question whether a particular document contains a "statement." *Palermo v. United States*, 360 U.S. 343, 354, 79 S.Ct. 1217, 1225, 3 L.Ed.2d 1287 (1959).[2] In the absence of statutory guidance, courts have left the manner of making this determination largely to the discretion of the trial judge—with several important caveats.

■ First, the duty of resolving this question rests with the trial judge; neither party bears a burden of proof or persuasion that may skew the result. *Campbell, supra*, 365 U.S. at 95,[3] 81 S.Ct. at 427.

> The statute ... implies the duty in the trial judge affirmatively to administer the statute in such a way as can best secure relevant and available evidence necessary to decide between the directly opposed interests protected by the statute—the interest of the Government in safeguarding government papers from disclosure, and the interest of the accused in having the Government produce "statements" which the statute requires to be produced.

*Id.; accord, Williams v. United States*, 117 U.S.App.D.C. 206, 208–09, 328 F.2d 178, 180–81 (1963); *Hilliard v. United States*, 115 U.S.App.D.C. 86, 87, 317 F.2d 150, 151 (1963); *Saunders, supra*, 114 U.S.App.D.C. at 348, 316 F.2d at 349; *Matthews, supra* at 910; *see Goldberg, supra*, 425 U.S. at 108 & n.14, 96 S.Ct. at 1347 & n.14. Accordingly, the trial judge must "conduct such inquiry as may be necessary to determine whether or not the conditions of the statute have been satisfied." *Hilliard, supra*, 115 U.S. App.D.C. at 87, 317 F.2d at 151; *accord, Williams, supra*, 117 U.S.App.D.C. at 208, 328 F.2d at 180; *Matthews, supra* at 910.

■ Second, the trial judge has several possible avenues open. The inquiry " 'may involve an interrogation of witnesses, or he may take an in camera examination of the statement,' or the circumstances may call for both such an in camera examination and interrogation of witnesses." *Williams, supra*, 117 U.S.App.D.C. at 208, 328 F.2d at 180 (quoting *Hilliard, supra*, 115 U.S.App. D.C. at 87, 317 F.2d at 151); *accord, Matthews, supra* at 910.

■ In some circumstances, a trial court may be able to determine that a document is not producible solely on the basis of testimony. *See United States v. Augenblick*, 393 U.S. 348, 353–55, 89 S.Ct. 528, 532–533, 21 L.Ed.2d 537 (1969); *United States v. Graves*, 428 F.2d 196, 200 (5th Cir.), *cert. denied*, 400 U.S. 960, 91 S.Ct. 360, 27 L.Ed.2d 269 (1970); *Canaday v. United States*, 354 F.2d 849, 859 (8th Cir. 1966). However, "when it is doubtful whether the production of a particular statement is compelled by the statute," the Supreme Court has "approve[d] the practice of having the Government submit the statement to the trial judge for an *in camera* determination." *Palermo, supra*, 360 U.S. at 354, 79 S.Ct. at

---

**2.** *Cf. Campbell, supra*, 365 U.S. at 92–93, 81 S.Ct. at 425–426 (when the United States admits that a document contains a "statement," but contends that portions of the statement do not relate to the witness' testimony, the court must examine the document *in camera* and excise irrelevant portions, in accordance with 18 U.S.C. § 3500(c) (1976)); *Rosser v. United States*, D.C.App., 381 A.2d 598, 606 (1977) (same).

**3.** *But cf. Goldberg, supra*, 425 U.S. at 123–24, 96 S.Ct. at 1354. (Powell, J., with Burger, C. J., concurring in the judgment) (defendant must meet initial burden of showing collateral inquiry necessary to protect discovery rights, but has no burden of ultimately proving existence of "statement").

1225. The Court has emphasized that "[i]t is also the function of the trial judge to decide, in light of the circumstances of each case, what, if any, evidence extrinsic to the statement itself may or must be offered to prove the nature of the statement." *Id.* at 354–55, 79 S.Ct. at 1225–1226. Courts repeatedly have followed the preference expressed in *Palermo* for *in camera* inspection of a document, coupled with the taking of any necessary extrinsic evidence, in order to establish the character of an uncertain document. *See, e. g., Campbell, supra,* 365 U.S. at 92, 81 S.Ct. at 425; *Rease v. United States,* D.C.App., 403 A.2d 322, 326–27 (1979) (per curiam); *United States v. Fowler,* 197 U.S.App.D.C. 208, 211–12, 608 F.2d 2, 5–6 (1979); *Williams, supra,* 117 U.S.App. D.C. at 209, 328 F.2d at 181; *Saunders, supra,* 114 U.S.App.D.C. at 349, 316 F.2d at 350.

### III.

■ Here, the trial court acted within its discretion, in beginning the inquiry, by taking the testimony of the police officer and prosecutors involved. The trial court recognized, however, that the hearing left unclear whether the notes contained either a statement "adopted" by Officer Kinney, 18 U.S.C. § 3500(e)(1) (1976), or a "substantially verbatim recital" of his comments to the prosecutor. *Id.* § 3500(e)(2).

In seeking to resolve the discovery issue at that point in the proceeding, the trial court committed both procedural and substantive errors. First, the court erred in suggesting the prosecution had to prove that the papering notes contained no "statement" in order to resist discovery successfully. The trial court has the duty of resolving the question whether a document contains a "statement" through an independent examination of available evidence, without reliance on artificial burdens of persuasion. *Campbell, supra,* 365 U.S. at 95, 81 S.Ct. at 426.

The court also erred in ordering the government to turn over "all facts" con-

tained in the papering notes. "Facts" as such are not producible Jencks Act material. The court failed to reach a clear and considered legal conclusion that the papering notes contained an "adopted" statement or a "substantially verbatim" transcription of Officer Kinney's comments. 18 U.S.C. § 3500(e)(1), (2); *see* note 2 *supra.*

■ On this record, moreover, we fail to see how the trial court could have done so. The government persisted in its view that the notes contained no "statement", and, as the court recognized, the testimony adduced at the hearing left unclear whether the notes contained a "statement." The two pages of notes themselves were readily available and could have at least supplemented and presumably illuminated the witnesses' testimony.

We recognize the trial court's legitimate interest in having the parties undertake on their own as much discovery as possible. The parties have a duty to conduct discovery in good faith, without abusing their right to judicial resolution of honest disputes. There is no hint, however, that the government lacked good faith in asserting there was no "statement" here. *See Rosser v. United States,* D.C.App., 381 A.2d 598, 606 (1977). When a bona fide question exists, the trial court must meet its obligation, with the aid of the parties, to examine pertinent evidence *in camera* and reach a considered conclusion as to whether a requested document is producible.

Accordingly, we hold that the trial court abused its discretion in refusing to examine the papering notes and then in ordering production of the notes without such inspection. We reverse the trial court's order prohibiting Officer Kinney from testifying and remand the case with directions that the trial court examine the notes *in camera* before ruling whether they contain a "statement" within the meaning of 18 U.S.C. § 3500(e) (1976).

*Reversed and remanded.*