Irving M. SAUNDERS, Appellant,

v.

UNITED STATES of America, Appellee.

No. 17122.

United States Court of Appeals District of Columbia Circuit.

Argued Nov. 16, 1962.

Decided Jan. 31, 1963.

---

347

Mr. George W. Shadoan, Washington, D. C., with whom Mr. John A. Yacovelle, Jr., Washington, D. C. (both appointed by the District Court), was on the brief, for appellant.

Mr. William C. Weitzel, Jr., Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., and Frank Q. Nebeker and Victor W. Caputy, Asst. U. S. Attys., were on the brief, for appellee.

Before Mr. Justice REED, retired,* and EDGERTON and WILBUR K. MILLER, Circuit Judges.

Mr. Justice REED (sitting by designation).

* Sitting by designation pursuant to Sec. 294(a), Title 28 U.S.Code.

Appellant has been convicted by a jury of robbing an employee of the Washington Post in a rest room located on the premises of the Post Building.[1] He has been sentenced to three to nine years imprisonment. This is a direct appeal from the conviction.

■ Appellant contends that the trial judge erred when he allowed the Government, over objection, to introduce evidence of a question asked by the appellant at his preliminary hearing before the U. S. Commissioner. It was not disputed at the trial that appellant was in the rest room where the robbery occurred shortly before the time of the crime. However, appellant denied at the trial that he was standing near a radiator when the victim, one Hedderson, entered the room. In an attempt to impeach appellant's testimony, the Government offered evidence that at his preliminary hearing appellant had asked Hedderson the following question:

"Don't you remember I was standing by the radiator when you walked up to the urinal; then I walked past you and walked right out the door?"

It is urged that since appellant was not represented by an attorney at the preliminary hearing, the admission of this statement resulted in a denial of his right to adequate counsel.[2] However, appellant was under no compulsion to speak and had been advised of his right to keep silent. The admission of his voluntary statement made in these circumstances was altogether proper. Nance v. United States, 112 U.S.App.D.C. 38, 299 F.2d 122 (1962).

We also reject appellant's contention that the trial judge failed to properly instruct the jury on the burden of proof borne by the prosecution. The instructions made perfectly clear that appellant could be convicted on the theory that he had aided and abetted in the robbery only if the jury was convinced of his necessary complicity beyond a reasonable doubt.

We are less satisfied, however, with the manner in which the trial court disposed of four requests made by appellant's attorney for the production of notes allegedly taken at pre-trial interviews with witnesses who testified for the Government. The order requiring closest scrutiny is that denying appellant's motion for the production of statements by Hedderson which the government attorney may have transcribed during the course of a pre-trial interview. During the cross examination of Hedderson, the following colloquy occurred:

"Q. You have never spoken to Mr. Caputy [the government attorney] about this case? A. Oh, I went to his office, yes.

"Q. And did you make a statement at that time, sir? A. I talked to him, yes.

"Q. Did you sign a statement? A. I don't know whether I signed one or not, to tell you the truth.

"Q. Did he take it down as you were giving it to him. A. Yes.

"Mr. Yacovelle: Your Honor, I move for that statement.

"Mr. Caputy: How ridiculous can he be? I make notes in my office, and that is my work sheet. He isn't entitled to it, if Your Honor please.

"The Court: The motion is overruled."

The so-called Jencks Act, 71 Stat. 595 (1957), 18 U.S.C. § 3500, requires that "[a]fter a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified." Paragraph (e) of the statute defines a "statement" to include the following:

"(2) a stenographic, mechanical, electrical, or other recording, or a

---

1. In violation of 22 D.C.C. § 2901.

2. Appellant relies on Wood v. United States, 75 U.S.App.D.C. 274, 128 F.2d 265, 141 A.L.R. 1318 (1942).

transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness to an agent of the Government and recorded contemporaneously with the making of such oral statement."

The Supreme Court has held that when a defendant seeks the production of a statement as defined in the statute, the district court has an affirmative duty to determine whether any such statement exists and is in the possession of the Government and, if so, to order the production of the statement. Because the defendant often does not and cannot know whether any such statement exists, the court must conduct any inquiry which is "necessary to aid the judge to discharge the responsibility . laid upon him to enforce the statute." Campbell v. United States, 365 U.S. 85, 95, 81 S.Ct. 421, 426, 5 L.Ed.2d 428 (1961); see Palermo v. United States, 360 U.S. 343, 354–55, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959). Such an inquiry may involve the interrogation of the witness or of the government agent, or an in camera examination of what is purported to be a statement under the statute. See Bary v. United States, 292 F.2d 53, 56–59, (C. A. 10, 1961); United States v. McKeever, 271 F.2d 669 (C.A. 2, 1959).

Here Hedderson testified that the government attorney took down what he said during the course of their interview. It did not appear, and appellant had no way of knowing, whether or not these notes were a substantially verbatim recital of what Hedderson had said. If they were, they constituted a statement under the Jencks Act and should have been delivered to the appellant's attorney if they related to the subject matter of Hedderson's prior testimony. Under the decisions of the Supreme Court, the trial judge was required to determine whether the conditions of the statute had been satisfied.

Instead, the court denied the motion for production, and the Government defends this denial, on the grounds that the notes, having been taken down by the government attorney, constituted the work product of the attorney and were thus immune from production under the Jencks Act.

It is true that the act was in large part a reaction to the Supreme Court's decision in Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L. Ed.2d 1103 (1957), and was intended to prevent criminal defendants from obtaining unlimited access to government files as a result of that decision. S.Rep. No. 981, 85th Cong., 1st Sess., U.S.Code Congressional and Administrative News 1957, p. 1861. But the statute applies to statements made by a witness to "an agent of the Government," and there is nothing in the statute which necessarily excludes government attorneys from its scope. The statute was intended to protect government files by its restrictive definition of "statements" and by limiting production to statements which relate to a witness' testimony. Johnson v. United States, 269 F.2d 72, 74 (C.A. 10, 1959). If a government attorney takes substantially verbatim notes of a witness' remarks, the production of these notes will no more imperil government files than if any other government agent had done so.

In Hickman v. Taylor, 329 U. S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), a qualified immunity from pre-trial discovery was conferred upon the "work product" of an attorney. The Government argues that the Jencks Act was not intended to negate this immunity. In Pittsburgh Plate Glass v. United States, 360 U.S. 395, 79 S.Ct. 1237, 3 L.Ed.2d 1323 (1959), it was held that, absent a particularized need, the act did not entitle a defendant to production of grand jury minutes containing the testimony of a government witness. To have required the production of such material under the Jencks Act would necessarily have defeated the policies requiring that testimony before the grand jury be kept secret. The work product rule, however, protects the mental processes of the attorney. Unlike the situation with grand jury minutes, it is possible to produce "statements" taken down by an attor-

ney, and still preserve the sanctity of the attorney's work product. If a government attorney has recorded only his own thoughts in his interview notes, the notes would seem both to come within the work product immunity and to fall without the statutory definition of a "statement." But if the attorney has made only a substantially verbatim record of his interview, then, quite the contrary, his notes constitute a "statement" and include no protected material flowing from the attorney's mental processes. United States v. Aviles, 200 F.Supp. 711, 715 (S.D. N.Y., 1961); cf. United States v. Crosby, 294 F.2d 928, 951 (C.A. 2, 1961), cert. denied, sub. nom; Mittleman v. U. S., 368 U.S. 984, 82 S.Ct. 599, 7 L.Ed.2d 523 (1962).[3] If the notes contain both verbatim remarks of the witness and personal observations of the attorney, then paragraph (c) of the act requires that the district judge inspect the statement and excise the protected material if this is possible. And if it is not clear from reading the notes whether or not they contain substantially a verbatim description of the witness' remarks, the court should conduct a hearing to resolve the matter. Palermo v. United States, 360 U.S. at 355, 79 S.Ct. at 1226; United States v. McKeever, 271 F.2d 669, 673-675 (C.A. 2, 1959)

In Aviles it was suggested that perhaps only those notes of a government attorney "taken during the investigative stage of the case * * * as distinguished from notes made in preparation for trial" might be subject to production under the statute. However, we find no reason to impose such a limitation since if notes are substantially a verbatim recitation of the witness' testimony, there is no invasion of the attorney's work product no matter when the interview was conducted.

It follows that the case must be remanded to the district court. The court should hold a hearing to determine (1) whether the government attorney's notes contained any material which should have been produced for the defendant, and (2) if so, whether the failure to do so resulted in prejudicial error. See Rosenberg v. United States, 360 U.S. 367, 79 S.Ct. 1231, 3 L.Ed.2d 1304 (1959). If the court determines both questions in the affirmative, it should vacate its prior judgment and grant appellant a new trial; otherwise the judgment must stand. This is in conformity with the procedure prescribed in Campbell v. United States, 365 U.S. at 98-99, 81 S.Ct. at 428.

Both Hedderson and a witness named Savoy indicated that it was possible that the police had transcribed their remarks during the course of interviews conducted by the police after the crime. Neither witness was certain that this had occurred and the government attorney informed the court that he knew of no such statements; on two occasions the trial judge sent the marshal to inquire of the police officer who had interviewed the witnesses whether he had such a statement, and the marshal returned each time to inform the court that the officer did not. We do not determine whether this was sufficient to discharge the court's duty to ascertain whether any qualifying "statements" were in the possession of the Government. On the basis of the record, it appears highly unlikely that any such statements were ever transcribed. But since we are remanding the case for a hearing in any event, and because of the possibility of misunderstanding when the court inquired of the police officer through an intermediary, we think that at the hearing the court should pursue somewhat further the question of wheth-

3. It may be true that the work product rule reflects considerations other than maintaining the privacy of the attorney's thoughts and trial tactics. See Developments in the Law—Discovery, 74 Harv.L.Rev. 940, 1027-29 (1961).

However, we find no rationale for withholding a witness' statement in the prosecutor's hands which satisfies the Jencks Act requirements, which is sufficient to overcome the Jencks decision and statute.

er any such statements are in the possession of the Government. If still convinced that there are no such statements, the conviction would be unaffected.

On remand the district court should also redetermine whether any statements by the witness Brockman should have been delivered to the defense and, if so, whether the failure to do so resulted in prejudice to the appellant.

The case is remanded for further proceedings in conformity with this opinion.