**GROOVER, CHRISTIE & MERRITT,**
Applicant,

v.

**Frank LoBIANCO, Jr., Administrator of the Estate of Madeline M. LoBianco, Alan R. Crain, Respondents.**

No. 18394.

United States Court of Appeals
District of Columbia Circuit.

Aug. 14, 1964.

---

William E. Stewart, Jr., Washington, D. C., was on the pleadings for the applicant.

David G. Bress, Leonard Braman and Stanley Klavan, Washington, D. C., were on the pleadings for respondents.

MEMORANDUM AND ORDER

Before DANAHER, BURGER and WRIGHT, Circuit Judges.

PER CURIAM.

A timely application was filed pursuant to 28 U.S.C. § 1292(b) (1958) for permission to appeal from an interlocutory order. The District Court on January 22, 1964 had ordered the applicant (hereinafter referred to as defendant Groover) to produce and permit the respondent (hereinafter referred to as plaintiff LoBianco) "to inspect and copy the copy of Dr. Fred O. Coe's letter dated April 9, 1962 to the United States Fidelity & Guaranty Company." District Judge Hart certified that his order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal * * * may materially advance the ultimate determination" of the litigation.[1]

Fully mindful of the well established policy opposed to the allowance of piecemeal appeals, and quite aware that only in the exceptional case have we permitted such an interlocutory appeal, we have the more carefully explored the subject matter. We are satisfied that the District Judge correctly discerned the importance of the issue, and in view of the record before us, we have decided to allow the appeal and to reverse summarily with directions.

The District Court will vacate its order to produce dated January 22, 1964, but if plaintiff shall so desire, without prejudice to consideration of a renewed motion to produce, for the amendment of which and for the filing of an amended opposition to which, leave shall be granted. The respective parties will be permitted to adduce such evidence as they

1. His opinion as to the importance of the order is corroborated by his further order that proceedings in the District Court be stayed pending an ultimate determination of the issues. The plaintiff LoBianco had represented to the District Court that the letter "is a most important feature of the case."

may be advised at a hearing as to whether: (1) "good cause" exists for the production of the document at issue and (2) the same is "not privileged," and otherwise in accordance with FED.R.CIV.P. 34. The judge will make such findings and conclusions as are deemed necessary for his determination, to the end that his ultimate ruling will be subject to review should an appeal ultimately follow a judgment in the case. A record as to such ruling having been preserved, the case may proceed to trial.

When filed in the District Court, the motion to produce was supported by an affidavit by plaintiff's counsel, accompanied by a Memorandum of Points and Authorities. The defendant Groover filed a memorandum in opposition.[2] However, exhibited to the District Judge, discernible from the respective affidavits, were certain undisputed facts.[3] It fairly appeared that on April 5, 1962, the plaintiff's decedent was a patient of defendant, Dr. Alan R. Crain. He had been authorized in writing to perform a discogram, an X-ray procedure. To that end, Dr. Crain made arrangements to utilize the X-ray laboratory of the defendant, Groover, Christie & Merritt, a partnership, of which Dr. Coe was a senior partner. At some point after the patient had been brought on a stretcher to the facilities maintained by the partnership, Dr. Crain decided to perform a myelogram. The procedure he selected involved the injection into the spinal canal of an allegedly highly toxic X-ray dye, identified as Hypaque. Within a few hours the patient died, allegedly as the result of a massive allergic reaction to the myelogram dye.

Present at least part of the time was a Dr. Russell L. Hughes, employed by the partnership. Also in attendance was an X-ray technician employee named Arnold Wilson. There is no suggestion that Dr. Coe had ever seen the plaintiff's decedent or that he had been present in the laboratory while the various procedures were being carried out.

Plaintiff LoBianco took the depositions of Drs. Hughes,[4] Corley, Bickham and Dr. Coe, all either employed by or partners in the Groover partnership, and the deposition of the technician Wilson.

The Groover, Christie & Merritt partnership on April 5, 1962 was insured against liability by United States Fidelity & Guaranty Company. The insurance policy is not a part of the record, so that its exact terms as to the duty of the insurance carrier and the obligations of the insured seem not to have been considered by the District Judge. It is clear, however, that shortly after Dr. Crain had used the Hypaque dye in the myelogram procedure, Dr. Coe was advised of that fact. Undoubtedly he was soon apprised of the death of the patient. Counsel representing the Groover firm and Dr. Coe on brief in this court have set out that Dr. Coe thereafter had prepared and sent a letter to the insurance carrier which was

"obligated to defend Drs. Groover, Christie & Merritt in the event of any claim of malpractice against them. This letter admittedly relayed information to this insurance carrier respecting the events of April 5, 1962 and the investigation conducted thereafter by Dr. Coe for the protection of his own firm and for the record in the event of any attempt to involve Drs. Groover, Christie & Merritt in this unfortunate matter. The making of this report was in accordance with the policy of Drs. Groover, Christie &

---

2. The original action, commenced only against the orthopedic surgeon, Dr. Alan R. Crain, was later consolidated with a second suit which named the Groover firm as defendant. Dr. Crain has filed no pleadings in this court.

3. The parties were in sharp conflict as to certain other claims which merely heightens our conclusion that a hearing should have been required.

4. For use at the deposition proceedings, the District Court ordered the production by Dr. Hughes of a memorandum which he had prepared for his own use and upon which he had relied to refresh his recollection when testifying.

Merritt to report any accident which took place in their facilities."

Counsel for plaintiff LoBianco submitted to the District Court an affidavit which recited in part that Dr. Corley of the Groover firm had informed counsel that Dr. Coe's letter "set forth the circumstances involving the use of Hypaque upon decedent in the course of a myelogram performed upon her on April 5, 1962 * * *." That letter had set out, according to the affidavit, "that 4 or 5 c.c.s. of Hypaque were used in the course of the myelogram performed upon decedent." Dr. Coe had retained in the Groover files a copy of the letter, apparently dated April 9, 1962, in which he reported to the insurance carrier the results of his investigation. That letter copy (not exhibited to the District Judge, so far as appears), was demanded by plaintiff's counsel when Dr. Coe's deposition was taken, but the defendant Coe declined to turn over the letter.[5]

We are concerned thus with two aspects: (1) was there a showing of "good cause" within the meaning of Rule 34 as interpreted in various court opinions? and (2) was the document privileged?

■ In Martin v. Capital Transit Co., 83 U.S.App.D.C. 239, 241, 170 F.2d 811, 813 (1948), we noted that the motion to produce was to be deemed insufficient for lack of a showing of good cause. We there read and interpreted Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947) as announcing general principles for the guidance of federal courts in the application of rules governing various discovery techniques. Alltmont v. United States, 177 F.2d 971, 978 n. 10 (3 Cir. 1949) understood Martin to require that the exercise of the trial court's judgment must rest upon a dem-

onstration by the moving party of a need for the document sought. The principle that the burden is on the movant to establish good cause pursuant to Rule 34 was asserted in Hauger v. Chicago, Rock Island & Pacific Railroad Co., 216 F.2d 501, 504 (7 Cir. 1954). The general rule which we deem applicable here is further considered in the excellent opinion of Chief Judge Sobeloff in Guilford National Bank of Greensboro v. Southern Ry. Co., 297 F.2d 921, 923 et seq. (4 Cir. 1962).[6]

■ We deem it clearly so that the requirement of Rule 34 that "good cause" be shown was not established on the record exhibited here. The course which we have directed be taken will make it possible for the trial judge, guided by principles to be discerned from the cases cited, and aided by able and experienced counsel, to make appropriate findings. His ultimate ruling will thus be based upon and reflect a record, subject if need be, to later review.

■ *Assuming* without suggesting that "good cause" may be established, whether and to what extent Dr. Coe's memorandum may be found "not privileged" within the meaning of Rule 34 poses a different question which the District Court will explore. That Dr. Coe following the unfortunate episode interviewed the various witnesses whose depositions later were taken, and then made some memorandum of the results of his inquiry would not seem to bring that memorandum within the "work product rule." Hickman v. Taylor, *supra*, discussed in our Saunders v. United States, 114 U.S.App.D.C. 345, 348–49, 316 F.2d 346, 349–50 (1963). We simply do not know under what circumstances the

---

5. Plaintiff's motion for production recited only that the document is in the possession, custody or control of the defendant; that it contains evidence relevant or material to the subject matter in suit; is reasonably calculated to lead to the discovery of such evidence; and that "denial of the requested production would unduly prejudice the preparation of plain-

tiff's case and cause him undue hardship." Otherwise plaintiff pleaded that "good cause" was "more fully shown in the depositions," the affidavit and plaintiff's memorandum of points and authorities.

6. See generally as to "good cause" under Rule 35, 52 Geo.L.J. 639, 643–44 (1964).

memorandum was compiled.[7] Moreover, the record does not now show the scope of the respective commitments of the insured and the insurer under the insurance policy said to have applied here.

Thus, we can not say that the defendant Groover has demonstrated, compare D. I. Chadbourne, Inc. v. Superior Court, 36 Cal.Rptr. 468, 388 P.2d 700, 704, 707 (1964), that Dr. Coe's memorandum is privileged, whether that privilege be said to derive from a client-attorney relationship, or otherwise. Compare People v. Ryan, 30 Ill.2d 456, 197 N.E.2d 15, 19 (1964).

When a record has been made which will include the judge's ruling, the reasons therefor and the findings upon which it is based, the case may proceed to trial.

Reversed for further proceedings consistent with this memorandum and order.

WRIGHT, Circuit Judge (dissenting).

This case is a graphic illustration of the mischief that results when the Interlocutory Appeals Act is misused. Here plaintiff's suit for the death of his wife has been stayed in the District Court for months while this court attempts to determine whether a ruling on a garden variety discovery motion is erroneous. And as shown by this court's order herein, the end is not yet in sight.

Mrs. LoBianco died when a toxic substance was injected into her spinal fluid in connection with the administration of a myelogram [1] by the defendant doctors. Dr. Coe, the senior partner of the radiology firm in whose facilities the injection was administered, began an investigation of the incident immediately after the injection and sent the report of his investigation to his insurer. Excerpts from that report were made available orally to plaintiff's counsel, but the balance of the report, and the written report itself, have been suppressed by the defendants on various grounds, including allegations that the report is the work product of a lawyer, that it is privileged, that no good cause for production is shown, and that the information contained therein is available otherwise. The District Court ordered production of the report, but certified its ruling to this court and stayed further action in the case pending review.

It is clear from the papers that this report of an investigation made contemporaneously with the incident in suit contains the most reliable information as to why Mrs. LoBianco died and who is responsible for her death. Depositions have been taken from all of the doctors involved, and these depositions are replete with refusals on the part of the witnesses to answer—sometimes on advice of counsel, inability of the witnesses to remember the details of the incident, and flat contradictions between the doctors participating in the incident as to what happened and what was said at the time. There can be no question, therefore, that good cause, as contemplated by Rule 34, F.R.Civ.P., for the production of the report is shown.[2]

The suggestion that the report in some way is the work product of a lawyer is difficult to understand. Admittedly the report was made by a doctor, completely unsupervised and unassisted by anyone.

---

7. We know that Dr. Hughes had prepared his memorandum for his own use; see note 4 *supra*.

1. A myelogram consists of the injection of an opaque dye into the spinal fluid to visualize by fluoroscopy the source of back pain. The patient here, who was suffering merely from backache, died within six hours of the injection.

2. In attempting to prove which of the defendant doctors are responsible for his wife's death, the plaintiff must rely on the testimony of the less than cooperative doctors themselves. In such circumstances, " * * * where the plaintiff was rendered unconscious and unable to obtain on-the-spot information, which the defendant was equipped and able immediately to gather, the rules should be liberally construed so as to ascertain the truth and make facts available in advance of the trial to either party, upon a showing of due diligence." Newell v. Capital Transit Co., D.D.C., 7 F.R.D. 732, 734 (1948).

Nor was the report even made to a lawyer. The report was made to the insurer of the doctor's medical firm, in the usual course of business, as required by his insurance policy. Counsel for the defendants insists that, though the report was made to the insurer, it is a privileged communication between counsel and client. This suggestion seems predicated on the idea that, since under the policy the insurer must furnish a defense for the assured, the insurance company here was merely an agent for transmittal of papers between the defendants and the insurance company's lawyers. How this report from insured to insurer can thus be converted into a privileged communication between attorney and client somehow eludes me. See Gottlieb v. Bresler, D.D.C., 24 F.R.D. 371 (1959). Even if it can be said that the insurer's lawyer under the policy became the lawyer for the assured, the report would still not be privileged because of its disclosure to a third person—in this case the insurance company. Certainly a court should not strain the concept of privilege where, as here, so doing may prevent this husband from proving who is responsible for the death of his wife.

Interlocutory appeal is permissible only where the issue raised presents a "controlling question of law" and such appeal will "advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). No controlling question of law is presented by this review of the District Court's ruling on a discovery motion. To permit review here is to "open the floodgates to a vast number of appeals from interlocutory orders in ordinary litigation." Milbert v. Bison Laboratories, 3 Cir., 260 F.2d 431, 433 (1958). And rather than advance the ultimate termination of this litigation, the dilatory tactics demonstrated by this record, including this interlocutory appeal, have already been the cause of significant delay.

When the Interlocutory Appeals Act was under consideration, the Judicial Conference of the United States, sponsor of the legislation, assured the Congress that appeals under the statute would "only be used in exceptional cases where an intermediate appeal may avoid protracted and expensive litigation, and [would not] be used or granted in ordinary litigation wherein the issues raised can otherwise be properly disposed of." H.R.Rep. No. 1667, 85th Cong., 2d Sess., p. 2. I respectfully suggest that the action taken by the District Court and this court in connection with the District Court's ruling on a simple discovery motion is not in accordance with this representation.

I would dismiss the appeal as improvidently granted.