**Albert L. COLBERT, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 81–1506.**

District of Columbia Court of Appeals.

Argued April 7, 1983.
Decided Jan. 9, 1984.

Michael S. Frisch, Washington, D.C., appointed by this court, for appellant. Donald Stuart Cameron, Washington, D.C., also appointed by this court, was on brief for appellant.

John M. Facciola, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty. at the time the brief was filed, Michael W. Farrell and Constance L. Belfiore, Asst. U.S. Attys., Washington, D.C., were on brief for appellee.

Before KERN and BELSON, Associate Judges, and REILLY, Chief Judge, Retired.

REILLY, Chief Judge, Retired:

Appellant was convicted by a jury of armed robbery, D.C.Code §§ 22–2901, –3202 (1981), second degree burglary while armed, D.C.Code §§ 22–1801(b), –3202 (1981), grand larceny while armed, D.C.Code §§ 22–2201, –3202 (1981), and unauthorized use of a motor vehicle, D.C.Code § 22–2204 (1981).

The evidence presented to the jury concerned the hold-up one December morning of the manager of a small restaurant on Wisconsin Avenue. According to the testimony of the manager, the crimes were committed by a man who had accosted him on the sidewalk while he was on his way to open up the restaurant. As he was unlocking the front door, the stranger suddenly came behind him, displayed the butt-end of a revolver, followed him inside, and forced him to open the safe. Then he was told to lie on the floor where he was bound hand and foot. The armed man proceeded to reach into the safe, took the manager's car keys from his pocket, and left the premises. After untying himself, the victim discovered that some $350 in cash was missing from the safe and that the automobile he had parked at the rear of the building had disappeared. In response to a telephone call, two uniformed policemen arrived at the scene, and shortly thereafter, the manager was also interviewed by two detectives.

Almost two weeks later, the police arrested appellant, who was driving a car which matched the description of the stolen vehicle. After the police returned this vehicle to the manager, the latter was requested to come to a police line-up where he designated appellant as the gunman who had forced his way into the restaurant. He reaffirmed this identification in court.

The defense challenged these identifications as mistaken and called appellant and other witnesses to the stand in an attempt to establish an alibi—*viz:* that appellant had been in his own home, a somewhat distant location, when the robbery occurred. In rebuttal, the government offered testimony which put the time appellant was seen at home into issue.

Appellant now contends that: (1) the trial judge's hostile attitude to defense counsel in the presence of the jury violated appellant's right to a fair trial; (2) there was insufficient evidence of any theft of money from the safe; (3) one statement by the prosecutor in closing argument unfairly prejudiced him; (4) a pre-trial hearing on his motion to suppress the identification at the line-up should have been granted; and (5) the court violated the Jencks Act, 18 U.S.C. § 3500, in refusing to make certain police reports available to the defense.

After examining the record, we have concluded that the first four of these assignments of error are lacking in merit and may be disposed of summarily. On appellant's fifth point—the Jencks Act issue—we regard the trial court's ruling as premature in the absence of an *in camera* inspection of the requested documents and, therefore, remand the case for the limited purpose of making such inspection and, if necessary, for reconsideration of the ruling. In all other respects, the judgment is affirmed.

With respect to the foregoing enumerated issues, the record discloses that:

■ (1) Repeated admonitions to defense counsel were fully justified by his persistent disregard of numerous trial court rulings on the admissibility of testimony and on objections to various questions propounded by him. Frequently, such tactics occurred in the presence of the jury and the progress of the trial would have been impaired by a series of interruptions if the jury were sent out each time the court felt it necessary to warn him against misconduct. None of the court's rebukes expressed any opinion on the merits.[1]

■ (2) While the complaining witnesses did not actually see appellant taking money from the safe, the fact that the $350 in cash, ordinarily placed in the safe by the night manager as a matter of daily routine before going off duty, was found to be missing after appellant had gained access to the safe provided sufficient evidence to warrant a jury inference that appellant had removed it.

■ (3) On direct examination of appellant, his counsel, apparently anticipating impeachment of credibility, asked about his prior record, and he admitted that he had been previously convicted of "storehouse breaking and robbery of a drug dealer." In urging the jury against according credence to appellant's alibi testimony, the prosecutor asserted that "his credibility . . . can be affected by the fact that he admitted . . . two felony convictions, a robbery and a housebreaking *and he also said something about dealing drugs. . . .*" (Emphasis added). Obviously, the last part of this comment was inaccurate, but amounted to reversible error only if calculated to cause

substantial prejudice in the eyes of the jury. *Dyson v. United States,* 418 A.2d 127, 132 (D.C.1980). Here any prejudicial impact is speculative, for it is difficult to think that the jury would have deemed the witness less truthful if it regarded him as an abettor, rather than a hijacker of a drug dealer. In any event, the error falls into the "harmless" category, for the court in its final instructions, reminded the jurors that statements of counsel were not evidence and it was their responsibility to evaluate the credibility of conflicting witnesses.[2]

■ (4) The ground advanced in support of the motion to suppress was that the complaining witness might not have selected appellant as the culprit had not the line-up been manipulated by the officers arranging it. A video-tape of the line-up, however, introduced at the trial revealed that this claim was baseless. The complainant testified that such video-tape was an accurate depiction of the identification he had made at the line-up. Appellant's sole objection to the admission of the exhibit was that it was inaccurate. This raised merely a question of credibility, for appellant never renewed his request for a hearing.

On the Jencks Act issue, the transcript shows that after the principal government witness, the restaurant manager, had finished his direct testimony, appellant requested the court to turn over to him the notes made by each of the four police officers who had interviewed the manager immediately after the robbery.[3] In opposing this request, the prosecutor asserted that the witness had never given the govern-

---

1. *Williams v. United States,* 293 A.2d 484, 485 n. 2 (D.C.1972). *See also Rosenberg v. District of Columbia,* 66 A.2d 489, 490 (D.C.1949). This court appointed a different lawyer to represent the defendant on appeal.

2. *See also Bates v. United States,* 403 A.2d 1159, 1163 (D.C.1979) ("... an isolated statement in an otherwise proper summation ..." is not grounds for reversal).

3. 18 U.S.C. § 3500(b) (1976), a subsection of the Jencks Act, provides:

(b) After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.

ment any statement which he had adopted as his own, that he had given a full report only to one of the officers, Detective John Love, and that the Love report had already been furnished to defense counsel except for two pages to be made available to him when the court recessed. Pointing out that Love was not the only officer to whom the witness described the hold-up, appellant insisted upon having all their reports. The court, correctly noting that the only kinds of statements producible under the Jencks Act were those written or adopted by the witness or those that were substantially verbatim records of what a witness had said, refused to order the government to produce the additional documents.[4]

Appellant now concedes that he had received a copy of the full report of Detective Love, but argues that this document was a later prepared formal report, in contradistinction to the notes Detective Love and the others took at the robbery scene "contemporaneously with the making of such oral statement."[5] It is the government's position that because appellant did not contend at trial that the records of the statements of the witness to the police were "substantially verbatim" rather than adopted by the witness, that appellant's belated rationale for objection to the court's ruling, not having been pressed below, cannot be considered as error by this court.

■ While this argument carries some force, it overlooks controlling case law in this jurisdiction with respect to the showing a cross-examiner must make in a demand for Jencks Act statements. *Saunders v. United States,* 114 U.S.App.D.C. 345, 348, 316 F.2d 346, 349 (1963); *Moore v. United*

*States,* 353 A.2d 16, 20 (D.C.1976). According to *Saunders,* when a defendant seeks the production of such a statement, the trial court has an affirmative duty, either by interrogation or by *in camera* inspection, to ascertain whether the statement is one defined by the Act itself as producible material and whether it is in the possession of the government. This requirement of judicial inquiry and determination applies to written notes taken when a government witness is interviewed pre-trial, as the party requesting them ordinarily has no means of knowing whether such notes amounted to a substantially verbatim recital of what the potential witness said.[6] Thus, a party demanding the production of pre-trial statements by a witness who has completed direct examination has no duty to explain why such documents fall within the categories defined in the Act as producible. This is a determination to be made by the trial court.

■ It is true that an officer's notes taken from the victim of a crime, "rarely, if ever, rise to such a degree of completeness (i.e. 'substantially verbatim') sufficient to satisfy the rigorous prerequisites of the Act." *March v. United States,* 362 A.2d 691, 699, 700 (D.C.1976). Hence, the court below made no error in not immediately ordering the government to turn over all the police notes to the defense. Nevertheless, we conclude that under the strictures in *Saunders* and *Moore,*[7] the court should have made the government present this material to it for *in camera* inspection, before ruling that defense counsel could not see

4. 18 U.S.C. § 3500(e)(1) and (2) (1976) defines a "statement" subject to production to include:
    (1) a written statement made by said witness and signed or otherwise adopted or approved by him; [or]
    (2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness to an agent of the Government and recorded contemporaneously with the making of such oral statement ...

5. *See supra* n. 4.

6. *Saunders v. United States, supra,* 114 U.S. App.D.C. at 348, 346 F.2d at 349.

7. The *March* case, *supra,* is distinguishable for there the notes withheld as not producible under the Jencks Act were written on a 3 × 5 card and, therefore, could not have been a "substantially verbatim" recording of *all* that was said.

these notes in advance of cross-examination.

Accordingly, the case is remanded to the same judge who presided at the trial to conduct a hearing and determine whether the notes requested constituted statements producible under the Jencks Act, and if so, whether failure by the government to make these notes available, resulted in prejudicial error.

*Remanded.*