**Mark A. JUDGE, Appellant,**

**v.**

**UNITED STATES, Appellee.**

**No. 90–392.**

District of Columbia Court of Appeals.

Submitted May 23, 1991.
Decided May 30, 1991.*

* The disposition in this case was originally issued as a Memorandum Opinion and Judgment of May 30, 1991, and is being published upon the court's grant of appellee's motion to publish.

Robert M. Greenspan, appointed by this court, filed a brief, for appellant.

Jay B. Stephens, U.S. Atty., and John R. Fisher, Roy W. McLeese III, Carol A. Fortine, and Kristan Peters–Hamlin, Asst. U.S. Attys., filed a brief, for appellee.

Before STEADMAN and WAGNER, Associate Judges, and GALLAGHER, Senior Judge.

STEADMAN, Associate Judge:

Appellant was convicted of distribution of cocaine, in violation of D.C.Code § 33–541(a)(1) (1989). He was sentenced to twenty months to five years imprisonment. Appellant contends the trial court committed reversible error in telling the prosecutor to turn over Jencks Act [1] material in the presence of the jury and commenting on the material. Appellant further alleges that there was insufficient evidence to prove that he possessed a usable amount of cocaine and that the aiding and abetting instruction was improper. We find no mer-

---

1. 18 U.S.C. § 3500.

it to the errors alleged and accordingly affirm.

The government's evidence showed that Officer Renee Davis was operating undercover on June 4, 1989, when she approached a woman near First and Kennedy Streets, N.W., who was apparently selling cocaine. Appellant soon thereafter joined them and asked Davis to meet him a block away where he instructed co-defendant Newsome to give her a rock of cocaine which Davis purchased with $20 of prerecorded funds. An arrest team consisting of Sergeant Greenfield and Officer Sinclair responded to Davis' broadcast of descriptions of appellant and his cohorts. Sinclair stopped appellant first and then ordered Newsome to stop and come back. Sinclair saw Newsome drop a brown bag as Newsome walked towards him. Sinclair recovered the bag and discovered that it contained a white rock substance that field-tested positive as cocaine. A search of Newsome revealed that he had $50 on his person, of which $20 was the bill Davis had used to purchase cocaine.

## I

The first alleged error occurred as defense counsel began his cross-examination of Officer Sinclair. His second and third questions were:

Q: Did you fill out any reports in connection with this transaction?

A: Yes.

Q: And would you tell us, please, what reports you filled out?

[PROSECUTOR]: Your Honor, may we approach briefly?

[THE COURT]: You've got the report. Didn't they give them to you?

A bench conference was held and the prosecution informed the court that it had not turned the reports over and the court ordered them to be turned over. Defense counsel moved for a mistrial on the basis of the court's statement. That prompted the court to make the following statement to the jury: "Ladies and gentlemen, the Government forgot to give him the reports. Now he's got them. The Government is supposed to give him these reports that the

officer may have filled out after the witness has testified, and she didn't do it. And that's why he wanted them."

■ Appellant argues these actions constituted per se reversible error, citing *Johnson v. United States,* 121 U.S.App. D.C. 19, 347 F.2d 803 (1965), and *Gregory v. United States,* 125 U.S.App.D.C. 140, 369 F.2d 185 (1966), *aff'd after trial,* 133 U.S.App.D.C. 317, 410 F.2d 1016, *cert. denied,* 396 U.S. 865, 90 S.Ct. 143, 24 L.Ed.2d 119 (1969). However, as the government correctly argues, neither case stands for that proposition. Indeed, to the contrary, we have applied harmless error analysis to discussions before the jury of the Jencks requirement. *Washington v. United States,* 397 A.2d 946, 951 (D.C.1979).

■ We fail to see how appellant can fairly claim prejudice. The jury was already aware of the existence of prior reports by appellant's own questioning. The remarks of the trial court were brief and straight-forward and indicated that the government, not appellant, was at fault. An inference that such reports bolstered Sinclair's testimony as prior consistent statements would represent sophisticated speculation by the jury absent any prosecutorial argument to this effect. Moreover, the testimony of Sinclair, the arresting officer, was at best tangential to the distribution to Davis of which appellant was convicted. We find any error harmless. *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).

## II

■ Appellant further contends that the evidence was insufficient to prove that he possessed a usable amount of cocaine. The evidence at trial was that the substance sold to Davis weighed 187 milligrams and was 91% cocaine. The government's expert testified that the cocaine was a usable amount to be ingested in the normal fashion and that "this amount would go for about $20 on the street." In *Wishop v. United States,* 531 A.2d 1005 (D.C.1987), this court stated that "the fact that a drug is measurable—*i.e.,* capable of quantitative

analysis—will usually suffice to prove it is usable." 531 A.2d at 1008. The evidence presented at trial was thus sufficient to prove the drug usable. *See Davis v. United States,* 590 A.2d 1036 (D.C.1991) (rocks weighing 144 milligrams and 97% cocaine were usable amount).

██ Appellant argues, nonetheless, that proof of usability requires proof that the amount was sufficient "to have a pharmacological effect on the user," [2] citing *Singley v. United States,* 533 A.2d 245, 247 (D.C.1987). However, as we noted in *Davis v. United States, supra,* distinguishing *Singley,* that case involved a chemical analysis which stated only that the material analyzed contained a "small amount" of heroin. The expert had testified that in his opinion a powder containing only "trace amounts" would not be usable, and that he did not know whether in a report of chemical analysis, "small amounts" differed from "trace amounts." In *Singley,* we cited *Edelin v. United States,* 227 A.2d 395, 399 (D.C.1967), which also involved traces and where we noted that there was "no additional proof" of its usability as a narcotic. Likewise, in *Singley,* we concluded that since "a trace amount is insufficient to convict whenever it cannot produce a narcotic effect in any form," the bare record presented could not support a jury finding of usability. There is no warrant to read *Singley* as imposing a requirement of proof of narcotic effect regardless of the quantity of the controlled substance and other proof of its usability. *Davis v. United States, supra.*

## III

██ Appellant finally asserts error in the trial court's giving any instruction on aiding and abetting, and, in any event, failing specifically to instruct the jury that the government must prove the elements of aiding and abetting beyond a reasonable doubt. In response to the first part of appellant's argument, it is not improper to give an aiding and abetting instruction even though the government pursued defendant as a principal where there is convincing evidence of defendant's participation in the crime with others. *Head v. United States,* 451 A.2d 615, 626 (D.C.1982); *Hackney v. United States,* 389 A.2d 1336, 1343–44 (D.C.1978), *cert. denied,* 439 U.S. 1132, 99 S.Ct. 1054, 59 L.Ed.2d 95 (1979); *see also Davis v. United States,* 498 A.2d 242 (D.C.1985). The evidence presented at trial met the above standard. With respect to appellant's other argument, the court gave a general instruction of the government's burden. A court need not repeat the instruction as to every element of every crime for which a defendant is charged where no such instruction is ever requested.

*Affirmed.*

██

2. Appellant requested such an instruction, which was denied by the trial court on the correct ground that it would ordinarily be applicable only to situations involving minute quantities of a controlled substance.