Michael JORDAN, a/k/a Ronald
Woods, Appellant,

v.

UNITED STATES, Appellee.

No. 92–CF–768.

District of Columbia Court of Appeals.

Argued June 2, 1993.
Decided Oct. 21, 1993.

Roy Conn, Public Defender Service, with whom James Klein, Public Defender Service, Washington, DC, was on the brief, for appellant.

Kenneth L. Wainstein, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty. at the time the brief was filed, John R. Fisher, Elizabeth Trosman and Dolan L. Garrett, Asst. U.S. Attys., Washington, DC, were on the brief, for appellee.

Before STEADMAN, FARRELL and WAGNER, Associate Judges.

STEADMAN, Associate Judge:

In the course of appellant's trial for first-degree murder and related offenses, four government witnesses indicated in cross-examination before the jury that they had given statements to investigating officers of a type arguably covered by the Jencks Act [1] but not furnished by the government to defense counsel. In each instance, following *voir dire* by the trial court outside the presence of the jury, the trial court concluded that no Jencks statements had been shown to in fact exist. The principal issue on this appeal is whether the trial court abused its discretion in refusing to directly inform the jury of the results of the *voir dire*.[2] We find no ground for reversal in the circumstances here and accordingly affirm.

## I.

On March 3, 1990, appellant fired several shots at Mott "Happy" Jackson. All the shots missed Jackson, but one struck and killed Ethel Boyd, a bystander. At trial, the government introduced numerous witnesses, including Jackson himself, who testified as to the events. The Jencks issue arose as a result of the cross-examination of four of these government witnesses: Ms. Proctor, Mr. Pendleton, Ms. Gaither, and Mr. Gainey.

In beginning the cross-examination of Ms. Proctor, appellant undertook a Jencks inquiry of the witness, to determine whether the witness had made prior statements to government officials which related to the subject matter of her testimony and which the government had not provided to appellant. Proctor testified before the jury that she had discussed the incident with a police officer who took notes as she spoke, and with the prosecuting attorney, whose notes she read and signed. At a bench conference immediately following this inquiry, appellant informed the court that he had not received any such materials. The prosecutor told the court that the witness was mistaken, that he did not take notes. The trial court accepted this assertion of the prosecutor and also ruled that the foundation as to a Jencks statement to a police officer was insufficient. Appellant asked that the trial court inform the jury that in fact there was no signed statement given to the prosecutor, expressing concern that otherwise the jury would believe that in fact such a prior consistent statement by the witness existed.[3] The trial court declined, saying that it would give appellant the opportunity to explore further and to impeach. Appellant did not avail himself of this opportunity. Appellant mentioned the possibility of a stipulation with the government, but the issue was not pressed. The next witness, Mr. Pendleton, similarly testified on initial cross-examination that he

1. 18 U.S.C. § 3500 (1988).

2. Appellant also contests the trial court's refusal to sanction the government for failure to preserve a tape of a 911 call. The trial court made a thorough investigation of the circumstances and, applying the proper factors, decided against sanctions. We find no abuse of discretion in this ruling on the facts here. *See Slye v. United States*, 602 A.2d 135, 138 (D.C.1992).

3. Appellant observed that if the initial Jencks questioning had taken place outside of the presence of the jury, the jury would not have known of the possibility of any prior statements. The trial court indicated that it would adhere to the format of initial Jencks questioning before the jury. Appellant made no direct objection to this procedure, and in any event, as we understand it, does not on appeal press a direct challenge to this general manner of proceeding in the first instance. *See, e.g., Miller v. Avirom*, 127 U.S.App.D.C. 367, 369–70, 384 F.2d 319, 321–22 (1967); D.C.App.R. 28(a)(3) (brief shall contain statement of issues presented for review). In any event, *see Wilburn v. United States*, 340 A.2d 810, 813 (D.C.1975) (Jencks hearing out of jury's presence only required "after direct or cross-examination of the witness reveals at trial that he recorded a statement").

had discussed the incident with police officers and that they had taken notes and read them to him.[4] The court again conducted a Jencks hearing outside the presence of the jury, where Pendleton indicated that he had been confused and now doubted that notes had been taken. Further colloquy with the prosecutor indicated that Pendleton had in fact given a single statement which had been turned over to the defense. Appellant again requested some jury instruction. The trial court again stated that it would allow further examination of the witness and raised the prospect of a stipulation, both of which again were apparently not acted upon by the parties.

Ms. Gaither and Mr. Gainey also indicated before the jury in cross-examination that notes had been made in interviews with police investigators.[5] Upon further inquiry outside the presence of the jury, a government detective testified that Gaither was mistaken in thinking that she had signed any statement or that notes were still extant that had not been furnished to the defense. The trial court accepted this testimony and concluded that no further Jencks statements existed. The court reached no conclusion with respect to the testimony of Gainey; while the court directed the government to determine whether any statements existed, there is no evidence that either side pursued the issue further. In neither case did appellant renew the request for a court instruction or other steps.

## II.

The Jencks Act provides that a defendant in a criminal trial is entitled to a court order directing the government to give the defendant, at the close of direct examination of a government witness, any statements or reports of the witness which are in the possession of the government and which relate to the testimony given. 18 U.S.C. § 3500(b) (1988).[6] The Act incorporates (while limiting) the Supreme Court's holding in *Jencks*

v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957); see Palermo v. United States, 360 U.S. 343, 346–47, 79 S.Ct. 1217, 1221–22, 3 L.Ed.2d 1287 (1959), and provides standardized procedures for administering the production of Jencks statements. S.REP. No. 569, 85th Cong., 1st Sess. 2–3 (1957).

▉ A defendant has the burden of moving for the production of Jencks materials, 18 U.S.C. § 3500(b) (1988); *Williams v. United States*, 252 A.2d 893, 894 (D.C.1969), and is entitled to cross-examine witnesses to probe for additional Jencks material. *See Young v. United States*, 120 U.S.App.D.C. 312, 313, 346 F.2d 793, 794 (1965). The trial judge has the affirmative duty to determine, out of the presence of the jury, whether statements exist and are in the possession of the government, and if so, whether they qualify as statements under the Act. *See Campbell v. United States*, 365 U.S. 85, 95, 81 S.Ct. 421, 426, 5 L.Ed.2d 428 (1961); *Saunders v. United States*, 114 U.S.App.D.C. 345, 348, 316 F.2d 346, 349 (1963). The trial court "must conduct any inquiry which is 'necessary to aid the judge to discharge the responsibility laid upon him to enforce the statute.'" *Saunders, supra,* 114 U.S.App. D.C. at 348, 316 F.2d at 349 (quoting *Campbell, supra,* 365 U.S. at 95, 81 S.Ct. at 426). The duty to determine whether a statement, as defined by the Act, exists "rests with the trial judge; neither party bears a burden of proof or persuasion that may skew the result." *United States v. Jackson*, 430 A.2d 1380, 1385 (D.C.1981).

▉ To avoid prejudice to a defendant, the transfer and inspection of Jencks materials also may take place outside the hearing of the jury. *See Gregory v. United States*, 125 U.S.App.D.C. 140, 146, 369 F.2d 185, 191 (1966); *Johnson v. United States*, 121 U.S.App.D.C. 19, 22, 347 F.2d 803, 806 (1965); *see also* 2 CHARLES A. WRIGHT, FEDERAL PRACTICE AND PROCEDURE § 438, at 601–2 (1982). The purpose of this procedure "is

---

4. He also testified that he had spoken with the prosecutor but that the prosecutor had taken no notes.

5. Ms. Gaither also indicated she had signed a statement.

6. Super.Ct.Crim.R. 26.2 implements the Jencks Act in the District of Columbia. *Washington v. United States*, 499 A.2d 95, 99 (D.C.1985).

to preclude the jury from drawing an inference that the statement or statements received are consistent with the witness'[s] testimony" where the defendant does not use the statements to impeach the witness, since prior consistent statements are not admissible in evidence.[7] *Gregory, supra,* 125 U.S.App.D.C. at 146, 369 F.2d at 191.

Appellant argues that the trial court erred in failing to prevent the jury from being misled in analogous circumstances here. He asserts that the trial court's inaction prejudiced him by allowing the jury to draw an inference from the unrebutted testimony given before the jury, coupled with appellant's failure to use any prior statements for impeachment, that prior written statements of the witnesses existed that were consistent with the witnesses' testimony. Appellant also argues that the jury would have found the overall testimony of the government witnesses less credible had it known of the apparent inaccuracies in their testimony with respect to the existence of prior statements.

### III.

Somewhat surprisingly, neither party has been able to cite to us, nor have we found, any local or federal case dealing with a challenge to trial court action or inaction following a trial court determination that possible Jencks material suggested by cross-examination of a witness [8] in the presence of a jury did not in fact exist. We can be guided in our analysis, however, by several well-settled principles. A trial judge has broad discretion in conducting trial proceedings. *Oesby v. United States,* 398 A.2d 1, 10 (D.C.1979); *Rosenberg v. District of Columbia,* 66 A.2d 489, 490–91 (D.C.1949); *see also Khaalis v. United States,* 408 A.2d 313, 347 (D.C.1979), *cert. denied,* 444 U.S. 1092, 100 S.Ct. 1059, 62 L.Ed.2d 781 (1980). As the Supreme Court has noted, "[t]he trial judge must meet situations as they arise and to do this must have broad power to cope with the complexities and contingencies inherent in the adversary process. . . . If truth and fairness are not to be sacrificed, the judge must exert substantial control over the proceedings." *Geders v. United States,* 425 U.S. 80, 86–87, 96 S.Ct. 1330, 1334, 47 L.Ed.2d 592 (1976). More specifically, the Supreme Court has squarely recognized that "the administration of the Jencks Act must be entrusted to the 'good sense and experience' of the trial judges subject to 'appropriately limited review of appellate courts.'" *United States v. Augenblick,* 393 U.S. 348, 355, 89 S.Ct. 528, 533, 21 L.Ed.2d 537 (1969) (quoting *Palermo v. United States,* 360 U.S. 343, 353, 79 S.Ct. 1217, 1225, 3 L.Ed.2d 1287 (1959)). Within these principles, we have reviewed here for an abuse of discretion and find none.

The only relief specifically requested by appellant was that the trial court inform the jury that, in effect, the court had found the witnesses' testimony on cross-examination to be inaccurate with respect to possible Jencks material. In the circumstances here, we think the trial court permissibly declined to do so. Such a step would risk injecting the trial court into a sphere that is the exclusive province of the jury; namely, the credibility of witnesses. *See Quercia v. United States,* 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1321 (1933) (reversing conviction because of trial judge's improper comment to jury about his perception of defendant's credibility on witness stand); *Womack v. United States,* 350 A.2d 381, 383 (D.C.1976) ("[t]he drawing of conclusions was a matter for the jury"). While the trial court had to come to a determination as to its view of the probabilities of the true factual situation to fulfill its assigned role in the Jencks process, it would be quite another matter to convey directly to the jury its determination in that regard.[9] Here, the

---

7. "It is familiar law that prior consistent statements are not admissible in evidence, and consequently it is improper to require a procedure, in exercising Jencks Act rights, which may permit the inference that the prior statements received are consistent with the witness'[s] testimony on trial." *Gregory, supra,* 125 U.S.App.D.C. at 146, 369 F.2d at 191 (internal footnote omitted).

8. Because of "reverse Jencks" rights of the government, *see* Super.Ct.Crim.R. 26.2(a); *Frye v. United States,* 600 A.2d 808, 810 n. 4 (D.C.1991), the witness in question could be one either for the government or the defense.

9. For the trial court to fully convey the context of its determination, it might be required first, to present a rather full explanation of the Jencks Act and the role and responsibilities of the par-

trial court left it fully open to both parties to question the witnesses further with respect to their Jencks testimony insofar as they thought it advisable, and, indeed, did not appear to preclude the possibility of the presentation of other witnesses on the issue.[10] Furthermore, the trial court presented the possibility of a stipulation between the parties, to be presented to the jury, a matter that was not followed up as far as the record indicates.[11]

In arguing that the trial court had an obligation to inform the jury of its findings, appellant invokes cases such as *Hawthorne v. United States,* 504 A.2d 580 (D.C.), *cert. denied,* 479 U.S. 992, 107 S.Ct. 593, 93 L.Ed.2d 594 (1986), involving the proposition that the government cannot knowingly present false testimony or allow false testimony to go uncorrected. Here, the testimony as to the existence of possible Jencks material came out on appellant's cross-examination. The possible inaccuracy of the information was known to the defendant as fully as to the prosecution. *Cf. Gates v. United States,* 481 A.2d 120, 127 (D.C.1984) (no improper concealment of evidence where defense equally aware of the evidence at issue), *cert. denied,* 470 U.S. 1058, 105 S.Ct. 1772, 84 L.Ed.2d 832 (1985); *Henson v. United States,* 399 A.2d 16, 18–19 (D.C.) (same), *cert. denied,* 444 U.S. 848, 100 S.Ct. 96, 62 L.Ed.2d 62 (1979). It is far from clear that the Jencks testimony by the witnesses can fairly be characterized as false testimony,[12] and it is somewhat of a mischaracterization of the Jencks inquiry to view the trial court's conclusions as findings of falsity. Moreover, the trial court present-

ed several other options for clarifying the record which were not pursued by appellant.

■ It is also relevant to take into account the situation the trial court faced in weighing its options. As we previously noted, requesting, transferring, and inspecting Jencks statements in the presence of the jury may prejudice an accused. Here, however, the jury observed neither a request for nor a physical transfer of any documents. The jury's attention was thus not as focused on prior statements as in cases of actual transfer. It is less probable, therefore, that the jury would naturally infer the existence of prior statements consistent with the current testimony. Furthermore, the objection to the introduction of prior consistent statements is at bottom based on the principle of irrelevance, that repetition does not strengthen veracity. *Reed v. United States,* 452 A.2d 1173, 1180 (D.C.1982), *cert. denied,* 464 U.S. 839, 104 S.Ct. 132, 78 L.Ed.2d 127 (1983). Therefore, the harm that may occur even if the jury should draw such an inference is less serious than the inadmissible introduction of clearly prejudicial evidence.

This court took cognizance of these considerations in *Judge v. United States,* 599 A.2d 417 (D.C.1991). There, a witness testified before the jury that he had previously completed witness reports, which the parties agreed qualified as Jencks material. The trial court ordered the government to give the reports to the defense, and explicitly informed the jury of the transfer of the reports. This court held that any error in this regard did not warrant reversal, since any inference of strengthened witness credi-

---

ties and the trial court, and second, to relate the testimony and other evidence underlying its determination that the witnesses were in error in their testimony before the jury. This is no small trial diversion. *Cf. Smith v. Executive Club, Ltd.,* 458 A.2d 32, 41 (D.C.1983) ("It is the trial court's function to exclude evidence that would confuse issues and distract the attention of the jury from the primary to the collateral issues.") Indeed, to properly separate the respective credibility responsibilities of the court and jury, it might be argued that the entire Jencks *voir dire* would have to be replicated before the jury.

10. Appellant in his brief indicates that he thought the trial court was prepared to allow him to call the prosecutor to impeach Proctor, as the record

indeed suggests. We need not here determine whether impeachment of Jencks testimony of a witness involves a "collateral issue" so as to preclude the introduction of extrinsic evidence. *See Harris v. United States,* 614 A.2d 1277, 1284 (D.C.1992).

11. Such a follow-up might include another request to the trial court for further action, such as a reopening of questioning, if efforts to stipulate failed.

12. As the trial court pointed out, the initial Jencks inquiry is conducted by way of leading questions and witnesses sometimes get confused by the multiplicity of interviews and unfamiliar procedures.

bility "would represent sophisticated speculation by the jury absent any prosecutorial argument to this effect."[13] *Id.* at 419. Here, such an inference by the jury would require even added speculation, because the jurors were completely unaware of the request for or transfer of any witness reports or statements.

Furthermore, a decision as to whether and how action might properly be taken in a situation such as that presented here may be influenced by the nature of the witnesses and their Jencks testimony. Here, as indicated, the testimony in the jury's presence dealt in the main with generalities. More importantly, the witnesses themselves and their credibility were not crucial in the trial. Only one of the witnesses, Proctor, identified appellant in court. However, Proctor had been impeached to a significant degree already in that she had made an incorrect identification at a photo array just a few months after the incident. Gaither identified appellant in a profile photograph, but the accuracy of her identification was also somewhat tenuous because she saw the shooter at the scene from only "a slight side view." Neither Pendleton nor Gainey ever correctly identified appellant as the shooter. The key testimony supporting the conviction was that of two other witnesses, Jackson, the intended victim, and Adams, a bystander who viewed the incident and squarely identified appellant as the gunman. Neither witness's testimony was tainted with the inaccuracies concerning prior statements.

 We are cognizant of the potential difficulties presented in the faithful fulfillment of the Jencks requirement where defense counsel elect, as is their right, to cross-examine about the possibility of the existence of statements covered by the Act other than those already furnished by the prosecutor. As previously stated, this appears to be the first appellate challenge of its type of which we are aware. We do not now attempt to lay out precise courses of conduct to be adhered to in the myriad of possible factual situations that may arise at trial; administration of the Jencks Act is, we repeat, "entrusted to the 'good sense and experience' of the trial judges." *Augenblick, supra,* 393 U.S. at 355, 89 S.Ct. at 533. We do observe, however, that in general, where feasible and appropriate, a more thorough pretrial discussion by the prosecutor with prospective government witnesses concerning the existence of possible Jencks material might significantly alleviate the type of situation which arose here, due apparently in good part to some confusion and uncertainty of the witnesses as to the relevant facts. In sum, within our "appropriately limited review," *id.,* we conclude that on the record here, the trial court did not abuse its discretion in handling the situation before it in light of the arguments and proposals presented to it.

*Affirmed.*

---

**13.** The prosecutor made no such argument here.